UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-414-GWU

IDA MCQUEEN,                                                 PLAINTIFF,

VS.                  **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

4.     Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5.     Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6.     Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7.     Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

4

06-414 McQueen

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In

such cases, the agency may be required to consult a vocational specialist. <u>Damron v. Secretary</u>, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Ida McQueen, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of post concussion syndrome status post head trauma, a cognitive disorder, a cervical strain, and degenerative arthritis and disc conditions of the lumbar spine. (Tr. 21). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. McQueen retained the residual functional capacity to perform a significant number of jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 24-7). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's work history and educational background could perform any jobs if she were limited to "medium" exertion and had a "limited but satisfactory" ability to maintain attention and concentration, understand, remember, and carry out detailed instructions, work within a regular schedule and respond appropriately to changes

in the work setting. (Tr. 392). The VE responded that with these restrictions, the plaintiff could return to her past work, which had included jobs as an office cleaner, bus monitor, general office worker and waitress/cook. (Tr. 391-2). The ALJ also described other jobs that the plaintiff could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 392-3).

On appeal, this court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

Mrs. McQueen testified that she could not work because of pain in her neck, hips, and lower back, and because of poor concentration, memory, and comprehension. (Tr. 382). She traced most of these problems to a fall on ice in January, 2004, which had rendered her unconscious and resulted in a concussion. (Tr. 379-80). She stated that she continued to have headaches two or three times a week, and her neck was also extremely painful. (Tr. 380-1). She subsequently had fallen down some stairs and had another concussion. (Tr. 387). She was nervous around people and machinery. (Tr. 384, 390). Her last work had been some self-employment, babysitting, in 2000, but she had been a full-time caregiver for her father between 2000 and his death in 2004. (Tr. 377). She testified that she did have help taking care of her father from nurses and relatives, however. (Tr. 384).

06-414 McQueen

Medical records in the transcript confirm that Mrs. McQueen was seen at an emergency room for a head injury following a fall on January 31, 2004, but a CT scan of the head was essentially negative and a neurological consultation by Dr. Alam Khan was non-focal. (Tr. 125-7, 133, 138). An x-ray of the cervical spine showed no evidence of abnormality. (Tr. 132). A lumbrosacral x-ray in March of 2004 did show spurring and degenerative disc disease; however, a subsequent MRI was essentially normal. (Tr. 156, 178). The plaintiff received follow-up treatment at the office of Dr. William Lester, a neurologist, but his diagnosis was a cervical/lumbar strain, and although he noted complaints of memory loss, did not make any specific findings in this regard. (Tr. 172-7). No functional restrictions were given at that time related to the diagnosis of cervical and lumbar strain.[1]

The plaintiff was also seen by her family physician, Dr. Jackie Maxey, who treated her for high blood pressure, headaches, and neck pain. (Tr. 186-91, 244-7, 310). Dr. Maxey completed a medical report on September 22, 2004 which gave the plaintiff's conditions as hypertension and degenerative disc disease of the back. (Tr. 184). He did not list functional restrictions, merely indicating that Mrs. McQueen

---

[1] A functional capacity assessment by Dr. Lester dated March 28, 2005 was submitted to the Appeals Council. (Tr. 359-62). It limits the plaintiff to a greater degree than found by the ALJ, but the plaintiff has not advanced "good cause" for failing to submit it to the ALJ, or argued that the report would provide a basis for remand under 42 U.S.C. Section 405(g).

reported that she had neck pain and reduced grip of the hands from sitting too long. (Id.).

Dr. Maxey referred his patient to Dr. Khan in early 2005 for further testing, but his physical evaluations showed no abnormalities and a new MRI of the brain was essentially normal. (Tr. 347-53).[2]

A state agency physician who reviewed a portion of the record concluded that Mrs. McQueen did not even have a "severe" physical impairment based on her normal motor and neurological function. (Tr. 242). In view of the lack of physical restrictions from any treating or examining source, the ALJ appears to have given the plaintiff the benefit of the doubt in restricting her to "medium" level exertion.

The plaintiff's arguments on appeal focus on her mental conditions, particularly her allegation of memory loss and poor concentration.

Dr. C. Christopher Allen, a licensed clinical psychologist, submitted a "neuropsychological report" based on testing conducted on July 15, 2004. (Tr. 165). He noted Mrs. McQueen's complaints of intermittent depression, reduced short-term memory, poor concentration and attention, and a "fuzzy" feeling in the head. (Id.). She was also going through some grief, having lost her father one month earlier.

---

[2] The ALJ declined to give any weight to a physical medical assessment form (Tr. 354-7) completed by a chiropractor, Larry Smith, because of the absence of any evidence of a treating relationship and because a chiropractor is not an acceptable medical source under 20 C.F.R. Section 404.1513.

(Id.). Dr. Allen noted no significant articulatory difficulty, and Mrs. McQueen's expressive and language skills seemed intact. His testing showed that her sensory and perceptual skills fell generally within normal limits, but her immediate and sustained attention were reduced, her ability to name objects was impaired, her delayed recall of verbal information was "severely" impaired, and her "analogical reasoning" fell within the borderline impaired range. (Tr. 166). However, on the next page of his report under the heading "conclusions," Dr. Allen inconsistently stated that the plaintiff's memory and analogical reasoning fell within normal limits. (Tr. 167). He felt that her profile suggested probable left parietal and bilateral frontal dysfunction, and there was also some evidence of right parietal damage. (Id.). He felt that these deviations were sufficient to greatly interfere with her functioning in everyday life circumstances, and would likely preclude her from gainful employment. (Id.). However, some improvement in functioning might occur over the next six months. He diagnosed a cognitive disorder not otherwise specified and "rule out" a depressive disorder. (Tr. 168). Dr. Allen assigned a Global Assessment of Functioning (GAF) score of 60. (Id.). A GAF of 60 is at the upper range of "moderate" impairment. Diagnostic and Statistical Manual of Mental Disorders (4th Ed.--Text Revision), p. 34.

Dr. Kenneth Starkey, another psychologist, evaluated the plaintiff on November 11, 2004. (Tr. 193). Dr. Starkey reported that the plaintiff was alert and

oriented, and was able to focus and sustain attention with mild and intermittent distraction from extraneous stimuli.  (Tr. 194).  She was able to report autobiographical information with reasonable accuracy, responded appropriately to most verbal directives and inquiries, and was generally able to complete three-stage commands reliably.  (Id.).  Mrs. McQueen reported that she could perform daily activities such as managing money, shopping, preparing simple meals, and using the phone, but needed help for more complex meal preparation, shopping for larger items, and meeting transportation needs.  (Tr. 196).  In contrast to the plaintiff's statements at the administrative hearing, Dr. Starkey recorded Mrs. McQueen as asserting that she liked to be around people and usually got along with others.  (Id.).  IQ testing appeared to be valid and showed a full scale score of 80, in the low average range, and Dr. Starkey wrote that the lack of a significant difference between the verbal and performance IQ scores contraindicated the likelihood of a cerebral impairment affecting one side of the brain.  (Tr. 197).  Achievement testing showed moderate deficits for basic/word reading.  (Tr. 198).  When given a memorization task, however, the results suggested "significant" deficits for learning and storage of verbally presented information, and moderate deficits for retrieval and recall of the information, as well as "significant" deficits in recognizing previously learned verbally presented information when provided visual clues.  (Tr. 200).  Dr. Starkey diagnosed a cognitive disorder not otherwise specified and nicotine

dependence, with a GAF score of 55. (Tr. 201). In terms of specific functional restrictions, he opined that Mrs. McQueen would be able to understand and follow simple instructions without significant difficulty, but it appeared that she would have a marginal ability to sustain attention to simple or repetitive tasks, to relate to others, and to tolerate the stress and pressures associated with most day-to-day work activities. (Id.).

A state agency psychologist, Dr. Laura Cutler, reviewed the record at this point. She stated that Dr. Allen's testing, although it indicated deficits in memory and sustained attention, was generally vague and did not include tests accepted by the state Disability Determination Services. (Tr. 206). The subsequent testing by Dr. Starkey indicated low average intellectual functioning with moderate deficits in attention and concentration, verbal memory function, and complex tasks. Dr. Cutler stated that this opinion was given great weight, but she rejected Dr. Starkey's opinions regarding a marginal ability to sustain attention, relate to others, and tolerate work pressures because they were not fully supported by his objective findings. (Id.). She concluded that the plaintiff would have the restrictions given by the ALJ in the hypothetical question to the VE. (Tr. 204-5). Another state agency psychologist, Dr. Lea J. Perritt, later reviewed the evidence and agreed with Dr. Cutler's conclusions. (Tr. 223-5). As previously noted, the plaintiff was treated by Dr. Khan, the neurologist, in 2005 for her complaints of memory loss and

depression, although she noted much improvement since Dr. Maxey had prescribed the anti-depressant medication Effexor. (Tr. 347). Although Dr. Khan did assess a closed head injury with "residual post concussion syndrome of poor memory and concentration, depression, and nervousness," his physical evaluations were completely normal, and a new MRI of the brain showed no abnormalities. (Tr. 349-52). Eventually, he concluded that it was likely the patient had some underlying depression as well as some cognitive decline, and recommended an increase in Effexor. (Tr. 353). No functional restrictions are given.

The plaintiff was also briefly seen for evaluation of depression at the Comprehensive Care Center (CCC) in 2005 on referral from her attorney to assist in her disability case. (Tr. 335). A licensed psychological associate provided an initial impression of a depressive disorder with a GAF of 60. (Tr. 334). However, the case was soon terminated because Mrs. McQueen reported she had no need for services and her "mild" depressive symptoms were responding well to medication prescribed by her family doctor. (Tr. 332-3).

The ALJ accepted Dr. Cutler's findings as being consistent with the actual, reported observations of Dr. Starkey and Dr. Allen, as opposed to their conclusions regarding restrictions and ability to work, and noted that they appeared to be

consistent with the later evidence from Dr. Khan and the CCC. (Tr. 25).[3] The plaintiff argues on appeal that it was error to reject the findings of Drs. Lester and Starkey. Generally, however, the opinion of a non-examining source may be accepted over that of an examiner where the non-examiner has had access to all of the evidence and clearly given reasons for the difference of opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). Although Dr. Cutler and Dr. Perritt did not see the most recent evidence from Dr. Khan, which was submitted at the administrative hearing, the additional evidence, as previously described, did not result in any additional objective findings or limitations.

Therefore, the question is whether Dr. Cutler's rationale for rejecting the opinions of the two examining sources is adequate. Although the court is somewhat troubled by Dr. Cutler's failure to mention Dr. Starkey's findings regarding learning and recalling verbally presented information (Tr. 200), she was, nevertheless, correct in pointing out that Dr. Starkey's conclusions concerning the plaintiff's ability to sustain attention, relate to others, and tolerate stress and pressures was at variance with his indications that Mrs. McQueen was able to focus and sustain

---

[3] As an additional reason for rejecting Dr. Starkey's report, the ALJ cited the plaintiff's testimony that she had reported Dr. Starkey to the Social Security Administration for treating her badly by screaming at her and telling her she was not trying. (Tr. 25, 388-9). Since Dr. Starkey's actual conclusions regarding the plaintiff's ability to work were generally favorable to the plaintiff's disability claim, disregarding his report would hardly be a benefit to her, but the plaintiff has raised no specific objections to this line of reasoning on appeal.

06-414  McQueen

attention, respond appropriately to verbal directives, and her report that she liked to be around people and usually got along well with others.  The ALJ noted this contradiction.  (Tr. 25).  There was also a contradiction in Dr. Allen's report, as previously noted, in his description of the plaintiff's memory and reasoning. Therefore, although there is some evidence to support the plaintiff's allegation of a cognitive impairment, the court concludes that there was sufficient evidence to the contrary for the ALJ to conclude that the plaintiff was not limited to a greater degree than found by the state agency reviewers.

    The decision will be affirmed.

    This the 30th day of November, 2007.

Signed By:

*G. Wix Unthank*

**United States Senior Judge**